IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRUNO MANSER FONDS,<br>Socinstrasse 37,<br>4051 Basel<br>Switzerland<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. FEDERAL BUREAU OF<br>INVESTIGATION,<br>935 Pennsylvania Ave., NW<br>Washington, DC 20535-0001<br><br>　　　　Defendant. | Civil Action No. <u>1:25-cv-35</u><br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

# COMPLAINT

1. Plaintiff, Bruno Manser Fonds ("Plaintiff" or "BMF"), brings this action against Defendant U.S. Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., to compel the disclosure of FBI records relevant to the controversial foreign beneficial ownership and control interests over an office tower in Seattle, Washington.

2. Defendant, this nation's leading law enforcement, counterintelligence, and counter-terrorism agency, has since 1999 been the occupant agency in a long-

term lease of this real property for use as the FBI's Seattle Field Office. As alleged below, the real property was credibly alleged many years ago to be owned by a foreign politically-exposed person.

3. Plaintiff and members of the American public have contended that the foreign politically-exposed person was completely inexplicable or unacceptable as a choice for a landlord to the FBI for various reasons of public policy.

4. Disclosure of the requested information is in the public interest because it is likely to contribute significantly to the public understanding about the operations management, national security risk exposure, and law enforcement activities of the U.S. government, as well as about the use of the United States as a money-laundering destination for foreign kleptocrats.

5. Plaintiff is informed and believes that this building (still to this day housing the FBI's Seattle Field Office) is ultimately Malaysian-owned, through a secret and elaborate offshore structure. More specifically, Abdul Mahmud Taib ("Taib") was the long-time ultimate beneficial owner of the real property until his death in February 2024.

6. As a senior Malaysian public official, Taib oversaw massive environmental degradation in his territory while secretly and corruptly acquiring extraordinary wealth. Taib invested and held much of that wealth in the names of others.

7. A key piece of the ownership structure behind this building housing the FBI's Seattle Field Office came to light in the 2021 "Pandora Papers" leak of offshore shell corporation files. These files added to a trail of evidence leading to Taib going back decades.

8. Meanwhile, for many years Taib's associates have actively attempted to cover up the facts about this offshore ownership structure behind the FBI's Seattle Field Office, in their statements to other government agencies.

9. The information in the records requested from Defendant under FOIA could provide further insight into potential wrongdoing in connection with the secret Taib ownership structure, such as: false claims to the government; false statements to the government; money laundering; anti-money laundering law violations; a conspiracy to obstruct the lawful functions of government agencies; and wire fraud and/or mail fraud.

10. Defendant itself is responsible for those federal laws' enforcement. However, pursuing enforcement of Taib in this matter of the Seattle office tower would paradoxically expose to Defendant's discredit how for many years, despite its mission, Defendant has allowed Taib and his associated entities and individuals to maintain their cover stories under its very nose. Defendant's indifference has come at its own peril and the general public's, and indeed has been in disregard of Congressional oversight directed at this specific property.

11. Plaintiff has pursued the truth about the building's true ownership where Defendant has had no appetite to do so, including by submitting FOIA requests for relevant records to Defendant in October 2022. Plaintiff's work is primarily directed against kleptocracy in Malaysia, but this includes where the trail leads from there to the United States, and to the doorstep of the FBI Seattle Field Office.

12. Defendant's response to Plaintiff's requests for documents about the foreign beneficial ownership interests in the building has consisted of gross error, inadequate searching, and unreasonable delay.

13. Over the past two years, Plaintiff has not yet received a single page of responsive documents -- without the Defendant making any assertion of an exemption under FOIA. Incredibly, Defendant plans to take several years to produce what few responsive records it says it has found so far.

14. Moreover, Defendant's claim that only a tiny batch of FBI records are responsive could not, under the circumstances, reflect a thorough, good-faith search.

15. Thus, Defendant has failed to comply with FOIA and make all responsive records timely available to Plaintiff.

16. Now with the patriarch Taib's recent death, beneficial ownership of his assets passed to the next generation of Taib's family. For multiple reasons of justice, accountability, transparency, and national security alleged below, the

foreign beneficial ownership of this building hosting the FBI's footprint in Seattle remains a grave issue of public concern.

17. Plaintiff, and those who would benefit from the information it seeks — including the American public and groups in civil society investigating corruption and environmental degradation in Malaysia and worldwide — cannot wait for the several years that the FBI plans to take before producing responsive records.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 28 U.S.C. § 1332, and 28 U.S.C. § 1331.

19. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1)(C) because the Plaintiff is an entity domiciled in a foreign state and the Defendant's principal place of business is in the District of Columbia, as is that of the leasing agency, the U.S. General Services Administration ("GSA").

20. Plaintiff, through its U.S. counsel Bruce H. Searby located in the District of Columbia, filed its FOIA request with Defendant FBI on October 3, 2022, asking for expedited treatment.

21. Five months after receiving the request, the FBI replied that there were no responsive documents at all.

22. Mr. Searby filed an appeal of this determination to the U.S. Justice Department's Office of Information Affairs ("OIA") on behalf of the Plaintiff.

5

The appeal argued the impossibility that the FBI possessed no responsive documents. After five months, the appeal led to a remand of the case to the FBI's FOIA office. That office received the remand on November 1, 2023, with instructions to search again for responsive documents.

23. Thereafter, the FBI FOIA Negotiation Team replied within a few weeks that Defendant had located only 224 pages of responsive documents but refused to produce those documents in less than an estimated 41 months. Searby refused on Plaintiff's behalf a reduction in scope and Defendant's unreasonably lengthy timing for such a small production. Searby noted the size was improbably small given the subject matter of the requests being a controversial FBI lease with national security and corruption implications.

24. At present, more than a year after the case's remand, and two years after the submission of the requests themselves, Plaintiff has not received any pages and no final determination. Therefore, Plaintiff has reasonably and constructively exhausted its administrative remedies in connection with the requests, giving this Court jurisdiction. 5 U.S.C. § 552(a)(6)(C)(i).

**PARTIES**

25. Plaintiff BMF is a Swiss non-profit, non-governmental organization with its place of business located at Socinstrasse 37, 4051 Basel, Switzerland. Plaintiff is dedicated to the missions of education, reporting, and public advocacy about current events affecting forests, natural ecosystems, and indigenous communities in Malaysia and elsewhere, as well as about related

6

corruption and money laundering. Plaintiff hired Mr. Searby in 2022 specifically to request the subject records under FOIA on BMF's behalf, which he expressly did.

26. Defendant FBI operates within the U.S. Department of Justice, a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f). Its headquarters are located at 935 Pennsylvania Avenue NW, Washington, DC 20535. The Defendant oversees national security and has counterintelligence, counter-terrorism, and law enforcement responsibilities. A top FBI criminal investigative priority, as asserted on its website, is investigating public corruption (including foreign kleptocracy). Upon information and belief, the Defendant has possession and control over the records requested by Plaintiff.

## STATEMENT OF FACTS

### The Underlying Controversy

27. Since 1999, the FBI Seattle Field Office has been located at 1110 East 3rd Avenue in Seattle, Washington 98101. On the original GSA lease, as well as the 1999 lease extending the FBI's use of the real property, the lessor is identified as Wallysons, Inc., a Washington State corporation with no publicly-listed shareholders.

28. However, as the U.S. Government Accountability Office ("GAO") found in a 2017 report to the U.S. Congress after investigating allegations by Plaintiff and others, this particular government lease may be an example of GSA

procuring high-security space from a politically-exposed person. The GAO reached this conclusion after interviewing FBI personnel and representatives of a Canadian company.

29. The aforementioned Canadian company falsely claimed to GAO auditors to be the ultimate beneficial owner of Wallysons, and thus the building.

30. Taib was until his death in early 2024 the Governor (and before that, Chief Minister) of the Malaysian state of Sarawak on the island of Borneo, and appears to Plaintiff and others to have been this long-time ultimate beneficial owner of the real property.

31. In his lifetime, Taib oversaw the conversion of the Sarawak primary rainforest into massive logging and palm oil concessions visible from space, while acquiring incredible wealth that cannot be explained by his limited income as a public servant.

32. Taib held extensive domestic and foreign assets in trust through a multitude of domestic and foreign companies and individuals. Taib held in the United States various forms of kleptocratic wealth including the Seattle office tower, purchased with funds acquired while he permitted the exploitation and destruction of the Sarawak rainforest on a colossal scale for logging and palm oil cultivation.

33. In 2018, after the GAO's above-referenced 2017 report, both houses of Congress specifically required the GSA and the Defendant to obtain

disclosures of Foreign Ownership and Control Interests ("FOCI") in the real property at issue before the agencies could lease it again.

34. However, the FBI and GSA leased the building again anyway in 2019 for another 15-year term from the same landlord, while manifestly failing to comply with Congress's resolutions requiring FOCI disclosure.

35. In addition, Congress had specifically called upon the Defendant and the GSA to communicate about the security implications of foreign ownership and control (were there any) before proceeding with a new lease. In years of investigating these events, Plaintiff has found no indication that any such communication has happened.

36. In fact, the Defendant had already determined to pursue a new lease of the building in 2017 before the GAO delivered its audit report with the finding on the foreign beneficial ownership by a politically-exposed person. Despite this finding and its serious implications, the Defendant and GSA chose, for short-term convenience in avoiding the bother and cost of office relocation, to proceed with the new lease from the Taib-owned company in late 2019.

37. The information belatedly provided to the GSA in 2020 by the landlord after the execution of a new lease was false and misleading, and lulling. At a minimum the landlord actively concealed the record ownership of Taib's son -- a Malaysian national and resident -- not to mention that of the notorious patriarch Taib.

38. Revelations in the 2021 Pandora Papers leak showed that Taib's son had purported sole-share ownership of the British Virgin Islands ("BVI") company, Rodinmass, Inc., which public court filings show owned the Seattle office tower.

39. Other Pandora Papers show that Rodinmass shareholding to be fictitiously-created, part of a practice Taib had utilized to hold ownership under the names of others, especially close family.

**BMF's FOIA Request**

40. On October 3, 2022, via Mr. Searby, Plaintiff submitted a FOIA request to the Defendant seeking records to understand and inform the public of Taib's beneficial ownership of, and funding behind, the Seattle property occupied by the FBI Seattle Field Office.

41. Plaintiff's document request seeks information from January 1, 1998 to the present, to include, among others, all records related to the subjects in connection with the Agency's dealings with, review of, and investigation of the "Seattle Commercial Real Estate Property," i.e., 1110 East 3rd Avenue, with a focus on the ownership and control interests of Taib, Taib's family, and specified affiliated entities and individuals. One of the other relevant categories of requests sought to trace government funds paid to the landlord for the FBI occupancy.

42. Plaintiff requested that these requests be processed on an expedited basis because they are made by an organization primarily engaged in

disseminating information to the public and the information is urgently needed to inform the public concerning some actual or alleged federal government activity. Specifically, Plaintiff sought to inform the public on how those U.S. agencies have executed upon their duties of due diligence, background checking, and investigation of issues in connection with that foreign ownership and control interest, and in connection with issues of false claims and kleptocracy under applicable United States law.

**Defendant's Responses to the FOIA Requests**

43. On December 30, 2022, Defendant acknowledged by letter that the FBI Headquarters received Plaintiff's FOIA requests for processing.

44. Errors by the FBI in handling Plaintiff's FOIA requests preceded this response, which came almost three months after the requests' submission.

45. On March 7, 2023, the FBI replied to Mr. Searby incorrectly asserting that there were no responsive documents.

46. On behalf of the Plaintiff, Mr. Searby filed a timely appeal on this determination with the U.S. Department of Justice's Office of Information Policy ("OIP").  Mr. Searby asserted that it was impossible that there were no documents responsive to Plaintiff's FOIA requests, given that: the FBI-occupied building was at the center of a public controversy; a government audit had focused on its beneficial ownership and the FBI's potential vulnerability from it; two Congressional resolutions had focused on the same;

11

and the FBI's public mission is to combat corruption globally, as alleged above.

47. After five months, on October 27, 2023, Plaintiff's appeal of Defendant's determination led to a remand of the case to the FBI's FOIA office. That office received the remand on November 1, 2023, with instructions to search again for responsive documents.

48. In a December 2023 dialogue with Mr. Searby, the FBI FOIA Negotiation Team indicated via email that it had located only 224 pages of responsive documents but refused to produce those documents in less than an estimated 41 months. The Negotiating Team told Mr. Searby that "the only way to further expedite [our] request would be to narrow [our] scope to the small track of up to 50 pages." Mr. Searby refused on Plaintiff's behalf a reduction in scope and Defendant's unreasonably lengthy timelines for such a small production – which he considered improbably small given the subject matter of the requests.

49. Upon a request for records, FOIA requires the agency to make a determination on a FOIA request, stating whether it will comply with the request within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i); 6 C.F.R. § 5.6(c). If unusual circumstances apply, then an agency may request, by written notice, an additional 10 working days to issue its determination. 5 U.S.C. § 552(a)(6)(B)(i). For requests that seek expedited treatment, an agency must make a determination within 10 business days. 5 U.S.C. § 552(a)(3)(E)(ii)(I).

50. FOIA requires each agency (1) to conduct a search reasonably calculated to uncover all responsive documents; and (2) to promptly make available such responsive records. 5 U.S.C. § 552(a)(3)(A), (C). Where a request has been granted expedited treatment, the agency must make records available as soon as practicable. 5 U.S.C. § 552(a)(6)(E)(iii).

51. If an agency fails to comply with the time periods set forth in the statute, then the requester is "deemed to have exhausted his administrative remedies," and may seek judicial review. 5 U.S.C. § 552(a)(6)(C)(i); (E)(iii).

52. As of the date of this complaint, Defendant still has not produced records to Plaintiff's requests, which are proper under FOIA, as even Plaintiff acknowledges as to some documents.

53. Nor as of the date of this Complaint has Defendant made a final determination as to the applicability of FOIA and its exemptions to any other records besides those it mentioned locating.

54. The American public should not continue to be blinded to the ongoing role of its own government in a foreign money laundering scheme, which has given comfort and repose to those responsible for kleptocracy and environmental exploitation. Nor should other relevant agencies and the legislative branch of the U.S. government be so blinded.

55. To the contrary, the U.S. Corporate Transparency Act of 2021, 31 U.S.C. § 5336, et seq., the implementing regulations for which went into effect last year, now mandates full disclosure to the government's financial intelligence

unit of the ultimate beneficial ownership of corporations such as the FBI Seattle Field Office's immediate landlord, Wallysons.

56. Finally, the continued disregard of the foreign ownership and control over the footprint of the FBI's Seattle Field Office poses national security risks. Taib historically had close ties to state enterprises of the People's Republic of China, which has actively attempted to acquire U.S. real estate for intelligence-gathering purposes.

57. Moreover, Taib's son, whose role in the secretive ownership structure appeared in the Pandora Papers, is married to a citizen and businesswoman of the Russian Federation. There is public interest in knowing what access this foreign power, now engaged in a hybrid conflict with the United States and its allies, could have to information about the building through the Taib family.

## COUNT I

**Violation of FOIA, 5 U.S.C. § 552 for Failure to Timely Respond**

58. Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

59. Plaintiff properly requested records within the possession, custody, and control of Defendants.

60. Defendant received Plaintiff's FOIA request.

61. Plaintiff has a legal right to a timely response to the FOIA request.

62. Defendant's failure to timely provide responsive documents to Plaintiff's FOIA request violates FOIA.

63. Defendant has failed to promptly process responsive agency records or make the records available "as soon as practicable."

## COUNT II

**Violation of FOIA, 5 U.S.C § 552 Failure to Grant Request for Expedited Processing**

64. Plaintiff repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

65. FOIA provides that agencies must promulgate regulations providing for expedited processing of requests for records when "made by a person primarily engaged in disseminating information" and there is an "urgency to inform the public concerning actual of alleged Federal Government activity," and "in other cases determined by the agency." 5 U.S.C. §§ 552(a)(6)(E)(i)(v).

66. Plaintiff requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and Defendant's relevant regulations.

67. Defendant constructively denied Plaintiff's request for expedited processing, the failure of which violates 5 U.S.C. § 552.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to do the following:

(1) Order Defendant to conduct a reasonable and expedited search for records responsive to Plaintiff's FOIA request;

(2) Order Defendants to produce, within ten days of this Court's order, or by such other date as the Court deems appropriate, a determination on Plaintiff's FOIA request;

(3) Order Defendants to produce, within 30 days of this Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to Plaintiff's FOIA requests and indexes of any responsive records withheld under claim of exemption;

(4) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request;

(5) Award Plaintiff reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(6) Grant Plaintiff such other relief as the Court deems just and proper.

Dated this 6th day of January, 2025.

                                      Respectfully submitted,

                                      /s/ Bruce H. Searby  
                                      Bruce H. Searby, DC Bar No. 1012382  
                                      SEARBY PLLC  
                                      2000 P Street, NW, Suite 705  
                                      Washington, D.C. 20036  
                                      Tel: (202) 750-6106  
                                      Fax:  202-849-2122  
                                      bsearby@searby.law

                                      COUNSEL FOR PLAINTIFF  
                                      BRUNO MANSER FONDS